UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DANIEL ELSTEIN, Individually and On Behalf      :
of All Others Similarly Situated,                             :
                                                                              :
                              Plaintiff,      :
                                                                              :
    - against -                                               :    **OPINION AND ORDER**
                                                                              :    13 Civ. 9100 (ER)
NET1 UEPS TECHNOLOGIES, INC., SERGE   :
CHRISTIAN P. BELAMANT, and HERMAN      :
GIDEON KOTZE,                                                    :
                                                                              :
                            Defendants.   :
-------------------------------------------------------------x

Ramos, D.J.:

       This case arises out of alleged violations of the Securities Exchange Act of 1934 (the "Exchange Act") by Net 1 UEPS Technologies ("Net 1" or "the Company"); Serge P. Christian Belamant, the Company's co-founder, Chairman of the Board, and Chief Executive Officer; and Herman Gideon Kotze, the Company's Chief Financial Officer, Treasurer, and Secretary (collectively, "Defendants"). The Complaint alleges that Defendants made material misstatements and/or omissions relating to Net 1's attempts to secure contracts in South Africa, causing certain Company financial statements to be materially false and misleading, in violation of Sections 10(b) and 20(a) of the Exchange Act and Securities and Exchange Commission Rule 10b-5. Doc. 1. Plaintiff Daniel Elstein brought the action as a class action on behalf of all those who purchased or otherwise acquired Net 1 securities between August 27, 2009 and November 27, 2013, and sustained losses upon the revelation of alleged corrective disclosures (the "Class"). Compl. ¶ 69. Plaintiffs Elstein and Ruhama Lipow now move to be appointed lead plaintiffs.

**I.      Background**

Daniel Elstein, through his counsel, Pomerantz Grossman Hufford Dahlstrom & Gross LLP (the "Pomerantz Firm"), filed the Complaint on December 26, 2013.  Doc. 1.[1]  On February 24, 2014, Plaintiffs Lipow and Elstein (collectively, "Plaintiffs") filed the instant motion for appointment as lead plaintiff and approval of the Pomerantz Firm as lead counsel.  On the same day, Plaintiff David Macquart moved for appointment as lead plaintiff and approval of Levi & Korsinsky LLP as lead counsel.  Doc. 8.  On March 5, 2014, Plaintiff Macquart filed a notice of withdrawal of his motion in support of Plaintiffs Lipow and Elstein's motion.  Doc. 14.  As such, Plaintiffs Lipow and Elstein's motion is the only pending application for lead plaintiff and approval of lead counsel.

Lipow and Elstein have each submitted certifications attesting that they are "willing to serve as a representative party on behalf of [the Class], including providing testimony at deposition and trial, if necessary."  Exhibit B to the Declaration of Jeremy A. Lieberman in Support of Plaintiffs' Motion for Appointment as Lead Plaintiff and Approval of Counsel.  Plaintiffs have similarly stated that they have the ability and desire to fairly and adequately represent the Class, and that "[t]here is no antagonism between [their] interests and those of the Class."  Pls. Mem. L. 7, 8.  Plaintiffs additionally claim to be an "appropriate group" for the purposes of acting as lead plaintiff because "the group is small, cohesive, consisting of only two members who share an interest and ability in prosecuting the claims of fellow shareholders," and note that they are sophisticated individual investors who "share the same goals and objectives."

---

[1] On December 26, 2013, the Pomerantz Firm also caused a notice to be published over Globe Newswire pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "Class Action Notice"), which advised that the firm had filed the instant action and that shareholders who purchased shares of Net 1 stock during the class period could apply for appointment as lead plaintiff until February 24, 2014. Pls. Mem. L. 4. According to Plaintiffs, they filed the instant motion pursuant to the Class Action Notice.  *Id.*

2

*Id.* at 8, 9. Plaintiffs also state that they have "reviewed [the] Complaint . . . [and] authorize the filing of a motion on [their] behalf for appointment as lead plaintiff." Ex. B to the Lieberman Decl. Finally, they point to the "extensive experience," skill, and knowledge of their counsel, the Pomerantz Firm, as support for its fitness as lead counsel. Pls. Mem. L. 9.

Lipow and Elstein have also submitted certain details regarding their individual and collective financial interests in the litigation. In particular, Lipow purchased a total of 17,000 shares of Net 1 on April 17, 2012 and May 14, 2012 for $155,819, and sold all of her shares on December 5, 2012. Ex. C to the Lieberman Decl. Lipow received $67,990 for the sale of her stock, reflecting a loss of $87,829. *Id.* Elstein purchased a total of 3,000 shares of Net 1 on April 5, 2010 for $50,160. *Id.* Because Plaintiffs estimated the value of these shares as of the filing of the instant motion to be $25,837, they submit that Elstein has suffered a total loss of $24,323. *Id.*[2] Collectively, Plaintiffs claim that, during the Class Period, they (i) purchased 20,000 shares of Net 1 stock; (ii) spent $205,979 on their purchases of Net 1 stock; (iii) retained over 3,000 of their Net 1 shares; and (iv) suffered losses in the amount of $112,152 as a result of the Defendants' alleged violations of the securities laws. Pls. Mem. L. 5.

Defendants contend that the motion should be denied because Plaintiffs have not made any showing that appointing Lipow and Elstein—two unrelated plaintiffs—would best serve the class. For the reasons discussed below, Plaintiffs' motion to be appointed lead plaintiff as a

---

[2] According to documents submitted in connection with his motion for appointment as lead plaintiff, Macquart made several purchases of Net 1 stock between June 30, 2011 and May 7, 2012, and similarly purchased options tied to Company stock on numerous occasions between July 6, 2011 and November 8, 2012. Exhibit B to the Declaration of Adam M. Upton. Macquart suffered losses in the amount of $73,918.36. *Id.*

Macquart noted in the withdrawal of his motion in favor of Lipow and Elstein's application that he "does not appear to have largest financial interest." Notice of Withdrawal of Plaintiff David Macquart's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel.

group is DENIED, Plaintiff Ruhama Lipow is appointed lead plaintiff and the Pomerantz Firm is approved as lead counsel.

## II. Appointment of Lead Plaintiffs

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Court is required to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(ii). The PSLRA further directs the Court to adopt the rebuttable presumption that the most adequate plaintiff is "the person or group of persons" that (i) has either filed the complaint or made a motion in response to a notice; (ii) in the determination of the court, has the largest financial interest in the relief sought by the class; and (iii) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The purpose behind these PSLRA provisions is to "prevent 'lawyer-driven' litigation, and to ensure that 'parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection and actions of plaintiffs' counsel.'" *Weltz v. Lee*, 199 F.R.D. 129, 131 (S.D.N.Y. 2001) (quoting *In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. 42, 43-44 (S.D.N.Y. 1998)). The presumption created by the statute may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class. *See Goldberger v. PXRE Grp., Ltd.*, Nos. 06-CV-3410 (KMK), 06-CV-3440 (GBD), 06-CV-3544 (KMK), 06-CV-4638 (KMK), 2007 WL 980417, at *3-4 (S.D.N.Y. Mar. 30, 2007) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)).

Here, it is undisputed that Plaintiffs satisfy the first requirement for the rebuttable presumption, as Elstein filed the complaint on behalf of the class and Lipow and Elstein filed the instant motion pursuant to counsel's December 26, 2013 Class Action Notice.  Pls. Mem. L. 4.

The second element of the rebuttable presumption—the question of which plaintiff or group of plaintiffs has the greatest financial stake—"is the pivotal factor under the PSLRA." *Reimer v. Ambac Fin. Grp., Inc.*, Nos. 08 Civ. 411 (NRB), 08 Civ. 1273 (NRB), 08 Civ. 1825 (NRB), 08 Civ. 1918 (NRB), 2008 WL 2073931, at *2 (S.D.N.Y. May 9, 2008).  The Second Circuit has not yet addressed whether unrelated class members may aggregate their claims in order to establish the "largest financial interest" element.  *See Goldberger*, 2007 WL 980417, at *4.  In an early and oft-cited application of the PSLRA, this court declined to aggregate the financial stakes of two unrelated institutional investors and four individual plaintiffs.  *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156 (S.D.N.Y. 1997).  There, the court opined that "[t]o allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff," and would serve to "allow and encourage lawyers to direct the litigation."  *Id.* at 157, 158.  However, the court's position in *Donnkenny* is "now the minority view."  *Reimer*, 2008 WL 2073931, at *2; *see In re Tarragon Grp. Sec. Litig.*, No. 07 Civ. 7972 (PKC), 2007 WL 4302732, at *2 (S.D.N.Y. Dec. 6, 2007) ("The issue is not whether losses or holdings may be aggregated by members of a group seeking to become the lead plaintiff; indisputably, they may."); *see also Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 119 (S.D.N.Y. 2010) ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff" (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)).  While the majority of courts in this Circuit now allow the aggregation of unrelated plaintiffs' financial interests for the purposes of appointment,

this court has required that unrelated plaintiffs first demonstrate that appointment as a group would best serve the class.

As the court in *Tarragon* made clear, "to enjoy the rebuttable presumption that the [PSLRA] confers, there must be some evidence that the members of the group will act collectively and separately from their lawyers." 2007 WL 4302732, at *2. Indeed, the "majority of courts, including those in this District," follow an intermediate approach that allows lead plaintiff groups on a case-by-case basis, and only if "a grouping would best serve the class." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008); *see also Beckman v. Ener1, Inc.*, No. 11 Civ. 5794 (PAC), 2012 WL 512651, at *2 (S.D.N.Y. Feb. 15, 2012) (quoting *Varghese* for the same); *In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. at 49 ("Because the PSLRA does not recommend or delimit a specific number of lead plaintiffs, the lead plaintiff decision must be made on a case-by-case basis, taking account of the unique circumstances of each case."). Accordingly, courts have required that unrelated plaintiffs seeking appointment as a group make an evidentiary showing that they will be able to "function cohesively and to effectively manage the litigation apart from their lawyers . . . ." *Varghese*, 589 F. Supp. 2d at 392.

In evaluating whether a group of unrelated plaintiffs will function cohesively and separately from their lawyers, courts have considered (1) the existence of a pre-litigation relationship between group members; (2) involvement of the group members in the litigation thus far; (3) plans for cooperation; (4) the sophistication of its members; and (5) whether the members chose outside counsel, and not vice versa. *Id.*

Defendants challenge Plaintiffs' motion on the basis that the movants have "failed to offer, among other things, any explanation as to the reason for its formation, how its members

intend to work together to manage the litigation, or how the group structure benefits the rest of the class." Defs. Opp. 7.  While Plaintiffs have proffered that the proposed group is cohesive, shares an interest and ability in prosecuting the claims of fellow shareholders and are both "sophisticated investors," they have failed to offer any insight as to how the group will proceed with its representation of the Class.  Pls. Mem. L. 8, 9.  They have similarly failed to proffer any background information as to their relationship, including whether it was formed prior to the filing of the instant motion.  As Defendants have observed, "[t]here is no indication that [Plaintiffs] have ever spoken to each other or know anything about one another."  Defs. Opp. 7.

As noted by the court in *Freudenberg v. E*Trade Financial Corp.*, Nos. 07 Civ. 8538, 07 Civ. 8808, 07 Civ. 9651, 07 Civ. 10400, 07 Civ. 10540, 2008 WL 2876373, at *4 (S.D.N.Y. July 16, 2008), a group of persons with no pre-litigation history "may be acceptable . . . so long as the group is relatively small and therefore presumptively cohesive."  However, a group of applicants with a pre-litigation history is "more likely to be appointed lead plaintiff, on the logic that a more cohesive group is more likely to function smoothly."  *Id.* (appointing a group consisting of three members who submitted that they had a longstanding pre-litigation history and a "clear understanding as to consultation, information sharing, and management of the litigation"); *see also Xianglin Shi v. Sina Corp.*, Nos. 05 Civ. 2154 (NRB), 05 Civ. 2268 (NRB), 05 Civ. 2374 (NRB), 05 Civ. 2391 (NRB), 05 Civ. 2503 (NRB), 05 Civ. 2826 (NRB), 2005 WL 1561438, at *5 (S.D.N.Y. July 1, 2005) ("The MAPERS Funds Group is the type of lead plaintiff envisioned by Congress in passing the PSLRA.  The three institutions have a prior relationship with each other as members of the MAPERS group for Michigan pension plans.  Each institution is a sophisticated investor with millions of dollars of assets under its control.").

Even though plaintiffs seeking appointment as a group are not required to show a pre-litigation relationship, courts have typically required that plaintiffs lacking such a relationship present a more compelling showing as to their fitness for the position. *See Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.*, No. 00-3605 (DRD), 2000 WL 33173017, at *5 (D.N.J. Nov. 16, 2000) ("[I]t is concluded that . . . the PSLRA does not require that members of a group of investors have some sort of pre-litigation relationship in order to be appointed lead plaintiff. Rather, what is required when considering whether to appoint a group of investors is whether that group will be able to effectively manage the litigation."). In *Janbay*, the court appointed as lead plaintiff an investor group that was introduced to each other on a conference call prior to seeking appointment because they were not only sophisticated individuals who demonstrated the intent to participate directly in the litigation and serve as class representatives, but also because "[t]hey have indicated that they have a detailed decision-making structure in place, with established methods for communication amongst themselves and with counsel." 272 F.R.D. at 119-20. Conversely, in *Varghese*, the court rejected the appointment of a group that provided the "conclusory assertion that it 'is small and cohesive so that coordinated decision making should not present any difficulties'" but did not supplement its application with "evidentiary support attesting to its ability to work together and oversee the litigation apart from its lawyers." 589 F. Supp. 2d at 394. There, as with Lipow and Elstein, the group "d[id] not describe how or why the group was formed, how its members will work together to manage the litigation, whether a pre-litigation relationship existed between its members, or any other information about how such aggregation would benefit the class." *Id.*[3]

---

[3] *Cf. Beckman*, 2012 WL 512651, at *3 (rejecting application of five-person group that included two brothers because, *inter alia*, the group "note[d] that it held one joint conference call, and each member signed a certification, [but did] not explain how the group was formed, and whether its members, excluding the Patel Brothers, previously

Moreover, the size of Plaintiffs' group is not dispositive. While it is true that courts in this Circuit often look to the small size of a group of unrelated plaintiffs as a basis for approving appointment,[4] "the fact that an unrelated group is small does not, in and of itself, make it a more acceptable lead plaintiff than a competing cohesive group." *Beckman*, 2012 WL 512651, at *3. Indeed, in *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 254 (S.D.N.Y. 2003), the court rejected the joint application of an individual investor and an institutional plaintiff because they had identical claims against the defendant and there was "no need to have them both as Lead Plaintiff." The court noted that "[t]here [was] nothing to indicate that the overall quality of the action will be improved by having multiple Lead Plaintiffs." *Id.* (internal citation omitted). Here, while it is certainly possible that the appointment of both Lipow and Elstein would benefit the Class, they have offered no reason why the Class would not be better served by a single plaintiff.

In sum, there surely can be benefits to having a group serve as lead plaintiff. *See Mitchell*, 1999 WL 728678, at *3 ("The Court recognizes that appointing a group of people as

---

worked together"); *In re Flight Safety Techs., Inc. Sec. Litig.*, 231 F.R.D. 124, 129 (D. Conn. 2005) ("[T]he joint motion submitted by the parties contains no indication of how the newly expanded group would function, such as whether certain lead plaintiffs would handle certain aspects of the litigation or whether decisions would be made by group consensus. Therefore, the Court finds that appointing eight unrelated and unfamiliar plaintiffs as co-lead plaintiffs, when no preexisting relationship is evident, would be counter to both the terms and the spirit of the PSLRA."); *see also In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 309 (S.D.N.Y. 2001) ("Given . . . that the Azimut Group has no independent existence and its composite members have no prior relationship, there is nothing to suggest that they will collectively ride herd on counsel anywhere as well as could a single sophisticated entity.").

[4] *See Reimer*, 2008 WL 2073931, at *3 ("We note, however, that a group appointment may be inappropriate where the group is too large or where it has not evinced an ability (and a desire) to work collectively to manage the litigation. In other words, the group must not be 'so cumbersome as to deliver the control of the litigation into the hands of the lawyers.'" (quoting *Weltz*, 199 F.R.D. at 133)); *see also Mitchell v. Complete Mgmt., Inc.*, Nos. 99 Civ. 1454 (DAB), 99 CIV. 2087 (DAB), 99 CIV. 2342 (DAB), 99 CIV. 2660 (DAB), 99 CIV. 2846 (DAB), 1999 WL 728678, at *3 (S.D.N.Y. Sept. 17, 1999) ("Naming a group of 141 class members as lead plaintiff . . . undermines the purpose of having a lead plaintiff."); *Goldberger*, 2007 WL 980417, at *4 ("[W]hile the PSLRA does not limit the number of persons who can be in a lead plaintiff group, it is obvious that a group consisting of 100 persons, even if they collectively had the largest financial interest in a litigation, likely would be a poor choice for lead plaintiff.").

co-lead plaintiffs is not only allowable under the PSLRA, but often beneficial."); *In re Oxford Health Plans, Inc., Sec. Litig.*, 182 F.R.D. at 46 ("The use of multiple lead plaintiffs will best serve the interests of the proposed class in this case because such a structure will allow for pooling, not only of the knowledge and experience, but also of the resources of the plaintiffs' counsel in order to support what could prove to be a costly and time-consuming litigation."). However, because the purpose of the PSLRA was to ensure that plaintiffs, and not their lawyers, drive litigation, *see In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d at 308, courts have required that unrelated plaintiffs make an evidentiary showing of their willingness and ability to serve as lead plaintiff separate and apart from the influence of counsel. And while the dangers involved in appointing multiple lead plaintiffs are ameliorated to an extent in a joint application by only two plaintiffs, courts have also been hesitant to rubber stamp motions filed by a small cluster of plaintiffs. *See Weinberg*, 216 F.R.D. at 254. As such, despite Lipow and Elstein's assurances that they are united in their goals and objectives and are willing and able to serve the Class, that is not enough to succeed on a lead plaintiff motion. Indeed, without more information, there is reason for Defendants' concern that this group has simply been "cobbled together" for the purpose of achieving the lead plaintiff designation. Defs. Opp. 8. Accordingly, the Court cannot grant Plaintiffs' motion.

### III. Appointment of Ruhama Lipow as Lead Plaintiff

While the Court rejects the motion of Plaintiffs as a group, the Court may consider Lipow, the largest shareholder of this group individually, as if she had moved to be appointed as lead plaintiff alone.[5] As noted, Lipow satisfies the first requirement of the PSLRA rebuttable

---

[5] *See Varghese*, 589 F. Supp. 2d at 394 (denying motion of group but evaluating group's largest shareholder against two plaintiffs who had individually moved for appointment); *Donnkenny*, 171 F.R.D. at 158 (rejecting aggregation of two groups and appointing as lead plaintiff a member of one of the groups); *In re Doral Fin. Corp. Sec. Litig.*,

presumption in that she has filed the instant motion in response to the Pomerantz Firm's Class Action Notice.

### a) Lipow's Financial Interest

The PSLRA does not specify a method for calculating which plaintiff has the "largest financial interest," and neither the Supreme Court nor the Second Circuit has provided instruction on the appropriate method. *See Beckman*, 2012 WL 512651, at *2; *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 8, 2008). Courts within this Circuit have adopted a four-factor test first promulgated in *Lax v. First Merck Acceptance Corp. v. Kahn*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997), and adopted in *In re Olsten*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998) (the "Lax/Olsten factors"). *See, e.g.*, *In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 445 (S.D.N.Y. 2013); *Beckman*, 2012 WL 512651, at *2; *In re Orion Sec. Litig.*, 2008 WL 2811358, at *5; *Varghese*, 589 F. Supp. 2d at 394-95; *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 234 (E.D.N.Y. 2011). The four Lax/Olsten factors are:

(1) the total number of shares purchased during the class period;

(2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period);

(3) the net funds expended during the class period, which represents the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period; and

(4) the approximate losses suffered.

---

414 F. Supp. 2d 398, 402 (S.D.N.Y. 2008) (denying motions of five groups and appointing as lead plaintiff the institutional plaintiff with the second largest losses that was otherwise determined to be more adequate and preferable than the institutional plaintiff with the largest losses); *Weinberg*, 216 F.R.D. at 254 (declining to aggregate financial interests of group and appointing as lead plaintiff the group member with the largest financial interest).

*See In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. at 445. The fourth factor—financial loss—is viewed as the most important. *Id.*; *see also Reimer*, 2008 WL 2073931, at *3; *Simmons v. Spencer*, Nos. 13 Civ. 8216 (RWS), 13 Civ. 8499 (RWS), 13 Civ. 8716 (RWS), 2014 WL 1678987, at *4 (S.D.N.Y. Apr. 25, 2014); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008).

     Of the three plaintiffs who have made application to be lead plaintiff, Lipow is the most appropriate under the Lax/Olsten factors. First, her total purchases of 17,000 shares of Net 1 stock during the Class Period far exceed those of Elstein, the only other remaining movant, who purchased only 3,000 shares during the Class Period. Ex. C to the Lieberman Decl. Furthermore, of the three plaintiffs, Lipow has the largest financial losses from her Net 1 transactions: $87,829. However, given that Elstein retained all of his shares of Net 1 stock throughout the Class Period, he has greater net shares purchased than Lipow. The significance of this factor is mitigated by the fact that Lipow sold all of her shares during the Class Period, and specifically that she did so on December 5, 2012, the day after the Company made the alleged corrective disclosure in its December 4, 2012 8-K filing. *See* Compl. ¶ 65. In *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 130 (S.D.N.Y. 2011), the court determined that institutional plaintiff Danica Pension A/S had a greater financial interest than another institutional plaintiff, Johnson Investment Counsel, Inc., where Johnson expended greater net funds and purchased more net shares but Danica had $500,000 more in investment losses. The court noted that Johnson had greater net shares purchased and net funds expended than Danica "only because Danica sold many shares during the class period." *Id.* at 130-31. Finally, the court stated that "Danica's low, or even negative, number of net shares purchased and net funds expended does not seem terribly relevant to which movant has the greatest financial interest since all of

Danica's sales occurred *after* partial corrective disclosures." *Id.* at 131.  For the same reasons, the Court finds that Lipow has the greatest financial stake in the litigation because her losses—in the amount of $87,829—are greater than Elstein's, who estimates his losses at $24,323.  This conclusion is wholly consistent with the approach often taken by courts in this Circuit.[6]  Accordingly, in the absence of any other pending applications for lead plaintiff, Lipow is presumed to have the greatest financial stake in the litigation.

        b) *Federal Rule of Civil Procedure 23 Requirements*

The third requirement for the rebuttable presumption is that the applicant otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  Rule 23 states that a party may serve as a class representative only if (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  For the rebuttable presumption to apply, courts have required only a *prima facie* showing that the requirements of Rule 23 are met.  *See In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. at 445; *Varghese*, 589 F. Supp. 2d at 397; *In re Orion Sec. Litig.*, 2008 WL 2811358, at *4; *Bensley*, 277 F.R.D. at 234.  Furthermore, "[t]ypicality and adequacy of representation are

---

[6] *Cf. Foley*, 272 F.R.D. at 131 ("In any event, we do not believe Danica's smaller amount of net shares purchased is significant enough to outweigh the fact that it sustained appreciably greater losses"); *Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 478-79 (S.D.N.Y. 2011) ("The Court rejects the Institutional Investors Group's argument that the loss factor can be ignored and that it should be selected based on their larger net shares purchased and net expenditures.  Certainly, these factors have to be considered, but they are not dispositive in themselves.  Most courts agree that the largest loss is the critical ingredient in determining the largest financial interest and outweighs net shares purchased and net expenditures."); *see also In re CMED Sec. Litig.*, No. 11 Civ. 9297 (KBF), 2012 WL 118302, at *3 (S.D.N.Y. Apr. 2, 2012) ("In giving weight to the four factors, courts in this District, as others, 'place the most emphasis on the last of the four factors:  the approximate losses suffered by the movant' above any weight accorded to net shares purchased and net expenditures." (quoting *City of Monroe Emps.' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 294 (S.D.N.Y. 2010)).

the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. at 49; *see also Simmons*, 2014 WL 1678987, at *4; *In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. at 445; *Varghese*, 589 F. Supp. 2d at 397; *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("Further, at this stage of the litigation, only a preliminary showing of typicality and adequacy is required.").

"Typicality is established where each class member's claim 'arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Freudenberg*, 2008 WL 2876373, at *5 (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). However, the lead plaintiff's claims need not be identical to the claims of the class in order to satisfy the preliminary showing of typicality. *In re Fuwei Films Sec. Litig.*, 247 F.R.D. at 436 (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, 229 F.R.D. 395, 412 (S.D.N.Y. 2004)). The Court concludes that, given the facts alleged and the cause of the losses incurred, other members are likely to assert claims arising from the same course of events and similar legal arguments as Lipow has. Accordingly, Lipow has made the preliminary showing required for typicality at this stage of the proceedings.

Lipow has also made the preliminary showing that she will fairly and adequately protect the interests of the Class. The adequacy requirement is satisfied where (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy. *Kaplan*, 240 F.R.D. at 94. Lipow has retained competent and experienced counsel, and has demonstrated losses that suggest she will have a strong interest in advocating on behalf of the

Class.  Moreover, to date, there have not been any reported conflicts between Lipow and the other members of the Class.  Accordingly, Lipow is entitled to the presumption that she is the most adequate plaintiff.

Finally, as a result of the withdrawal of Macquart's motion, the only opposition Lipow faces is from Defendants.  However, because Lipow's status as the presumptive lead plaintiff "may be rebutted only upon proof *by a member of the purported plaintiff class*," Lipow is therefore appointed Lead Plaintiff in this action.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added).

## IV. Appointment of Lead Counsel

The PSLRA provides that upon appointing a lead plaintiff, he or she "shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  There is a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel.  *See In re Adelphia Commc'ns Corp. Sec. & Derivative Ltiig.*, No. 03 MDL 1529(LMM), 2008 WL 4128702, at *2 (S.D.N.Y. Sept. 3, 2008) (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001)).

Lipow has selected the Pomerantz Firm as lead counsel.  Courts in this Circuit have previously approved the Pomerantz Firm as lead plaintiffs' counsel in securities class actions on a number of occasions.  *See, e.g.*, *Goldberger*, 2007 WL 980417, at *5 ("Pomerantz Haudek[7] is experienced in class action and shareholder derivative lawsuits.  The Court finds that Pomerantz Haudek is capable of adequately representing the putative class in this action and [the lead plaintiff's] motion is granted."); *In re Elan Corp. Sec. Litig.*, No. 02 Civ. 865 (WKFM), 2002

---

[7] Pomerantz Grossman Hufford Dahlstrom & Gross LLP was previously known as Pomerantz Haudek Grossman & Gross LLP.

WL 31720410, at *5 (S.D.N.Y. Dec. 3, 2002) ("Both [the Pomerantz Firm and the other proposed lead counsel] are accomplished in the field of securities litigation and eminently qualified for this assignment. Consequently, the selection of these firms as counsel for the Lead Plaintiff is approved."); *In re Symbol Techs., Inc. Sec. Litig.*, No. 05-CV-3923 (DRH) (JO), 2006 WL 1120619, at *3 (E.D.N.Y. Apr. 26, 2006) ("The [Pomerantz Firm's] resume indicates that it has successfully prosecuted numerous securities fraud class actions and is otherwise well qualified and free of conflicts. Accordingly, the Court appoints [the Pomerantz Firm] as lead counsel."). Accordingly, the Court finds that the Pomerantz Firm is qualified to serve as lead counsel for plaintiffs.

### Conclusion

For the reasons set forth above, Plaintiffs' motion to appoint Lipow and Elstein as lead plaintiff is DENIED. Ruhama Lipow is appointed lead plaintiff and Pomerantz Grossman Hufford Dahlstrom & Gross LLP is approved as lead counsel. The Clerk of the Court is respectfully directed to terminate the motion (Doc. 11).

SO ORDERED.

Dated:   July 23, 2014
         New York, New York

                                                          _____
                                                          Edgardo Ramos, U.S.D.J.